UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-20147-LEIBOWITZ

UNITED STATES OF AMERICA

vs.

BEATRIZ TOLEDO,
    a/k/a "Betty Toledo,"
    a/k/a "Beatriz Sardinas,"

        **Defendant.**
_____/

**UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM**

The longer one peels back the layers of Defendant Beatriz Toledo's life (the "Defendant")—past the merely outrageous facts of the offense conduct that brings us here—the more shocking the story becomes. Sure, it starts with a $20.7 loss to federal taxpayers through the repeat submission of a bogus energy tax credit for clients of her tax preparation business who unquestionably did not qualify for them. And yes, it continues with the weight of the nearly *eight thousand* taxpayers over at least a five-year period on whose behalf she submitted these fraudulent tax credits—approximately 69% of the returns she filed during that stretch. But the core of the Defendant's past sweeps so far beyond the criminal enterprise she led for more than half a decade.

In addition to the fraudulent energy credits the Defendant engineered for most of her clients, more than 10 taxpayers told law enforcement that she also prepared tax returns for each of them with tens of thousands of dollars in additional fraudulent credits and deductions. Those fraudulent claims include massive sales tax and impairment-related work expense deductions, presupposing hundreds of thousands of dollars in commercial purchases the taxpayers did not make and/or injuries they did not suffer from. The defendant has admitted to fraudulently seeking these additional deductions for each of her three counts of conviction.

Before perpetrating this massive fraud, the Defendant committed another. According to the Government's complaint against the Defendant and other parties filed in 2009, the Defendant operated a different tax preparation business and submitted at least 1,491 tax returns in 2006 and 2007 claiming over $3.6 million in fraudulent fuel tax credits. This district court ultimately entered a permanent injunction against the Defendant upon a joint motion she signed and consented to prohibiting her from engaging in such conduct—a prohibition the defendant knowingly violated nearly 8,000 times through her actions in this case.

Moreover, the Defendant did all this *after* being charged and tried for money laundering with her former husband. Although the defendant was acquitted of the charges, her husband was convicted of three counts of failure to file currency transportation reports and sentenced to 27 months' imprisonment (Case No. 96-cr-00599-UU). Rather than reflect upon the consequences for violating the law, she jumped into the above schemes with renewed vigor.

The United States respectfully requests this Court to impose a high-end guideline sentence not only because of the seriousness of the Defendant's conduct, her history and characteristics, and the need to provide respect for the law and provide appropriate punishment, but also because clearly nothing else will deter her.

I.   **SENTENCING GUIDELINES AND RECOMMENDATION**

The Government recommends that the Court sentence the Defendant to 71 months imprisonment as to Counts 12, 13, and 14.[1] As explained in its Objections (DE 41) to the Presentence Investigation Report ("PSI") (DE 40), the Government believes that the PSI failed to properly include a two-level enhancement for sophisticated means under U.S.S.G. § 2T1.4(b)(2).

---

[1] The statutory maximum sentence for each of Counts 12–14 is three years. Thus, the Government requests that the Court fashion the ultimate sentence as to these counts so that the Defendant serves 36 months as to Count 1 *consecutively* to an additional 35 months as to the remaining counts.

The Government submits that the proper advisory guideline range in this case should be 57 to 71 months based on a final offense level of 25. This calculation is based on a base offense level of 26 for a tax loss of between $9,500,000 and $25,000,000 (U.S.S.G. §§ 2T1.4(a) and 2T4.1(K)), plus a two-level enhancement for being in the business of preparing tax returns (§ 2T1.4(b)(1)), the aforementioned two-level enhancement for sophisticated means (§ 2T1.4(b)(2)), a two-level reduction for being a qualifying zero-point offender (§ 4C1.1), and a three-level reduction for acceptance of responsibility (§ 3E1.1). The PSI concluded that the Defendant's final offense level should be 23, with a resulting guideline range of 46 to 57 months (PSI ¶¶ 47, 87).

The Government believes that a sentence at the top of the guidelines, 71 months, is sufficient but not greater than necessary to achieve the aims of sentencing and assures that the Defendant is appropriately sentenced commensurate with her role running a five-year fraud scheme that snatched more than $20 million from United States taxpayers and placed much of it in her pocket. The Court can, and should, sentence the Defendant for her creation of a lucrative tax fraud business, her past fraudulent tax conduct that was civilly enjoined, and her defiance of a federal court order in her unceasing efforts to steal from the United States treasury.

## II. STATEMENT OF FACTS

### A. The Defendant's Fraudulent Tax Business Causes a $20.7 Million Tax Loss

In 2013, the Defendant created her own tax preparation business, Immigration and Tax Service Group LLC ("ITS") (PSI ¶ 17). Between at least 2017 through at least 2021, the Defendant prepared and submitted approximately 7,800 tax returns claiming fraudulent Residential Energy Credits ("REC") (*Id.*, ¶ 19). The REC allowed taxpayers to claim credit to reduce their owed tax, or increase the amount of their refunds, for making energy-saving improvements such as solar panels to their residence (*Id.*, ¶ 18). The Defendant, however, submitted returns for taxpayers who

had not made qualifying energy saving expenses to their residences or told the Defendant they had made such improvements, and thus were ineligible for the credit. (*Id.*, ¶ 19). During that same period, ITS prepared a total of approximately 11,270 tax returns, meaning that approximately 69% of all returns in this period contained fraudulent RECs (*Id.*). All told, the Defendant caused a tax loss to the IRS of $20,759,160 (*Id.*).

In addition to the many fraudulent RECs the Defendant sought and received from the IRS on behalf of clients, she also submitted returns with other fraudulent tax credits and deductions. Specifically, for at least the three taxpayers and returns forming the counts of conviction in this case, the Defendant admitted that she submitted tens of thousands of dollars in fraudulent Schedule A deductions for sales tax and impairment-related work expenses (PSI ¶¶ 25–27; DE 37:2–4). These and at least seven other taxpayers told law enforcement that the Defendant had submitted returns for multiple tax years with large sales tax and business deductions for which they did not qualify (PSI ¶ 24). Law enforcement identified more than a dozen tax filings with fraudulent Schedule A tax deductions, as well as a few with fraudulent Schedule C deductions (*Id.*, ¶ 30).

**B.     The Defendant's Prior Permanent Injunction**

The Defendant did not personally sign any of the tax returns she prepared, instead submitting them solely in the name of ITS and using an Electronic Filing Identification Number ("EFIN") registered to her son (PSI ¶¶ 28, 31).[2] According to three employees of ITS, the Defendant's son had no role in the business. One motivation for the Defendant to remove her name from ITS's tax returns is that she had previously been enjoined from filing fraudulent tax returns as part of a civil fraud action against her in 2009 (PSI ¶ 21). The allegations in that fraud complaint

---

[2] The Defendant was an authorized member for the EFIN, allowing her to use it to file taxes while still using her son's name as the primary registrant.

are strikingly similar to the Defendant's admitted conduct in this case. The complaint alleged that the Defendant and her co-defendants "claimed absurdly large fuel tax credits by falsely reporting purchases of large quantities of gasoline and diesel fuel, especially when compared to their customers' reported adjusted gross incomes" (Complaint for Permanent Injunction and Other Equitable Relief, Case No. 09-cv-21987-COOKE (S.D. Fla.), ¶ 16, attached hereto as **Exhibit A**). Such conduct occurred throughout 2006 and 2007 and resulted in "at least 1,491 tax returns" that "claim a total of over $3,600,000 in bogus fuel tax credits" (*Id.*, ¶ 9). Although several employees at the tax preparation business were alleged to have filed fraudulent tax returns, the Defendant was the owner of the company (*Id.*, ¶ 7). The complaint details at least four instances of blatantly false returns that the Defendant personally filed (*Id.*, ¶ 20–23). The Defendant also directed others to prepare false tax returns (*Id.*, ¶ 24).

On July 15, 2020, the Defendant signed a joint motion for entry of a permanent injunction by consent with the United States (PSI ¶ 21). On July 26, 2010, former United States District Judge Marcia G. Cooke of the Southern District of Florida signed and entered a permanent injunction against the Defendant, prohibiting her from, among other things, "preparing any part of a return, amended return, or claim for refund that includes an unreasonable position, including, without limitation, inflated claims for the deduction of business or employee expenses" and "assisting or aiding others to evade the payment of taxes or to prepare false or fraudulent federal income tax returns." (*Id.*, ¶ 23). As discussed above, the Defendant violated this order thousands of time through her conduct with ITS.

On April 11, 2024, a grand jury sitting in the Southern District of Florida returned an indictment charging the Defendant with fifteen counts of aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2) (Counts 1–15), and one count of contempt of

5

court, in violation of 18 U.S.C. § 401(3) (Count 16) (DE 1). On December 9, 2024, the Defendant pleaded guilty to Counts 12–14 of the Indictment, charging her with aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2) (DE 35).

## III.   GOVERNMENT'S SENTENCING SUBMISSION

The Government believes that the nature and circumstances of this shocking offense and the Defendant's history of fraud require a high-end sentence of 71 months. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense are extremely serious. The Defendant caused a $20.7 million loss to U.S. taxpayers, profited to the tune of over $7 million for operating a largely fraudulent tax business, and singlehandedly prepared thousands of fraudulent returns for ITS over at least a five-year period. Moreover, she did all this while attempting to conceal her identity because she was previously sued by the United States for a separate tax fraud scam.

Second, the need for general deterrence and to promote respect for the law counsels in favor of a substantial prison sentence. Tax fraud is an all-too-common offense that effects nearly everyone and undermines a system that relies upon taxpayers to legitimately and honestly file their returns. Making clear that individuals who assist others in evading their tax obligations will be punished, especially those who do so for profit and in such a repeat and egregious manner, sends a powerful and important signal to the community.

Third, there is a tremendous need for specific deterrence for this Defendant. The Defendant was indicted for money laundering. Then she was sued for tax fraud and permanently enjoined from such conduct by a federal district judge. And despite these legal troubles and past fraudulent conduct, her response was to create a new tax preparation business and commit fraud bigger and

better than ever. The Defendant will no doubt lean on her age and health as reasons why she is not likely to recidivate, but the Court should treat those arguments with as much skepticism as an ITS tax return. The Defendant was in her late-50s while committing massive fraud with substantially the same health conditions then as now. Nothing done to date has deterred her, and the Government respectfully submits that nothing other than a significant sentence in this case will.

Fourth, a 71-month sentence is consistent with recent assisting and aiding the preparation of fraudulent tax return cases. In June 2024, Judge Huck sentenced a tax preparer who caused an approximate $4 million tax loss to 30 months imprisonment for violating 26 U.S.C. § 7206(2) (*United States v. Pierre Louis*, 23-cr-20379-PCH). That defendant, like the Defendant here, also received acceptance of responsibility credit and an enhancement for being in the business of tax preparation (*Id.* at DE 22). The Government's proposed sentence here is approximately 2.33% larger than in that case, for a tax loss more than five times greater (to say nothing of the other aggravating factors present here). And two months ago, Judge Altonaga sentenced a tax preparer to 57 months imprisonment, the high end of the guidelines, who caused an approximate $11 million tax loss where the IRS had "identified at least 29 tax filings containing fraudulently inflated tax refunds the Defendant filed on behalf of at least 13 separate tax clients" (*United States v. Mendieta*, 24-cr-20320-CMA (DE 16:3)). According to the Government's sentencing memo, that Defendant also received the business of tax preparation enhancement and acceptance of responsibility deductions and had a guideline range of 46 to 57 months (DE 21).

These cases were serious and were sentenced accordingly. However, neither of them presented the sophistication or extensiveness of this scheme, neither had nearly the loss amount presented here, and neither of them had a defendant with such a pervasive history of fraud. To sentence this Defendant commensurate with the fraudulent tax preparers who have come before

7

her, the Court should impose a sentence at the high end of this guideline range. If ever a case calls for it, this one does.

## IV. CONCLUSION

For the above reasons, the United States respectfully requests that the Court sentence the Defendant to 71 months imprisonment.

                Respectfully submitted,

                HAYDEN P. O'BYRNE
                UNITED STATES ATTORNEY

By: */s/ Will J. Rosenzweig*
     Will J. Rosenzweig
     Assistant United States Attorney
     U.S. Attorney's Office – SDFL
     Court ID No. A5502698
     99 NE 4th Street, 6th Floor
     Miami, Florida 33132
     Tel: (305) 961-9403
     Email: Will.Rosenzweig@usdoj.gov