## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cr-20147-LEIBOWITZ

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff, | ) |
| v. | ) |
| BEATRIZ TOLEDO | ) |
| Defendant, | ) |
| _____/ | |

### SENTENCING MEMORANDUM AND RESPONSE TO GOVERNMENT'S SENTENCING RECOMMENDATION

Defendant BEATRIZ TOLEDO, by and through her undersigned counsel, hereby files her Sentencing Memorandum and her response to the recently filed Memorandum by the government, and in support thereof, states as follows:

### INTRODUCTION

During the relevant time periods, Ms. Toledo was an income tax preparer. She maintained her office in Miami-Dade County. On April 11, 2024, Ms. Toledo was indicted and charged with 15 counts of assisting in the preparation of false income tax returns during years 2017, 2018, 2019, 2020, and 2021 in violation of 18 U.S.C. Section 7206(2). She was also charged with one count of Contempt of Court in violation of 18 U.S.C. Section 401(3).

As a result of Ms. Toledo assisting in the preparation of these returns, the clients received tax refunds that were larger than they were legally entitled to. The United States estimates that the resulting tax loss for the years 2017 through 2021 is a bit over 20 million dollars. Ms. Toledo has accepted responsibility for her improper conduct and is deeply sorry. Ms. Toledo intends to address the Court at her sentencing hearing.

**OBJECTIONS TO GOVERNMENT'S SENTENCING MEMORANDUM**

On March 13, 2025, the government submitted its sentencing memorandum and made certain claims which are either improper, not supported by facts, or both.  Those claims are as follows:

The government claims that, almost 20 years ago, Ms. Toledo operated a different tax preparation business (PCPS Corporation) and submitted at least 1,491 tax returns in 2006 and 2007 claiming over $3.6 million in fraudulent fuel tax credits.  This was the precursor to the 2009 injunction which permitted Ms. Toledo to continue preparing tax returns. While Ms. Toledo concedes that a permanent injunction was issued against her and other parties in 2009, she vehemently denies that she prepared any fraudulent returns during that time.  Ms. Toledo became involved with that matter because she was introduced to an elderly gentleman (Alberto Alem) by a mutual acquaintance and that gentleman used Ms. Toledo's electronic filing identification number ("EFIN") to electronically submit tax returns that **he (Mr. Alem)** prepared.  He prepared these returns from a business location which was separate and apart from Ms. Toledo's business location during the applicable years of 2006 and 2007.  Ms. Toledo had <u>absolutely nothing</u> to do with the preparation of those returns.  She had no involvement and no connection to the preparation of those returns or the clients whose returns were prepared.  Her only connection to that matter was that she allowed this other individual to use her EFIN for purposes of electrically filing returns. She was trying to help this elderly man out by doing him a favor.  Unfortunately, this favor blew up in her face.  The permanent injunction that the government mentioned had several provisions.  The provision which was pertinent to Ms. Toledo was paragraph (2)(E) of the Stipulated Final Judgement of Permanent Injunction (attached as Exhibit "A"), which

states that Beatriz Sardinas (a/k/a Beatriz Toledo) is PERMANTLY ENJOINED from directly or indirectly:

> Allowing persons other than Sardinas and those employed by PCPS the use of a personal or business Employer Identification Number, Taxpayer Identification Number, Preparer Tax Identification Number, Social Security Number, **Electronic Filing Identification Number**, or any other federally issued identification number to prepare or file income tax returns.

The government's claim that Ms. Toledo had a hand in these fraudulent returns is false and misleading and this Court should either disregard it or at least consider the important distinction that Ms. Toledo's role was extremely minor compared to the characterization offered by the government.

Aside from that, the government went on to point out in their memorandum that, prior to the permanent injunction in 2009, Ms. Toledo was charged and tried for money laundering with her former (now deceased) husband. This was a criminal case which occurred almost thirty years ago (in 1996) and Ms. Toledo was <u>acquitted of all charges</u>. It is highly improper for the government to attempt to use this information to persuade the Court to impose a more severe punishment to someone who was acquitted for a completely unrelated allegation which occurred almost thirty years ago. While undersigned understands that federal courts can, on occasion, factor in acquitted conduct when formulating a criminal sentence, that usually occurs when a Court has had the benefit of sitting through a trial and can make a determination that something was established by a preponderance of the evidence (albeit not beyond a reasonable doubt). If a defendant is acquitted at trial of one or some counts but also convicted of one or some counts, Courts have considered acquitted conduct when fashioning a sentence for the counts which the

defendant was convicted at trial. This Court is in no position to do that here because this Court did not preside over the trial that Ms. Toledo had almost thirty years ago. Undersigned objects to this statement by the government and respectfully requests that this Court give **zero** weight to this argument and disregard it entirely for purposes of sentencing.

## OBJECTION TO SOPHISTICATED MEANS ENHANCEMENT

Defendant Toleo objects to a two-point enhancement for sophisticated means. This enhancement applies to cases where the defendant employed complex or intricate methods to conceal illegal activities. This can include using third-party accounts, obscure financial instruments, or other elaborate schemes to hide income or assets. The enhancement serves to impose harsher penalties on defendants who engage in particularly deceptive or planned fraud. More specifically, the Sentencing Guidelines explain that "sophisticated means … includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. Section 2T1.1 comment. (n.4). This inquiry necessarily involves a comparison between the present case and the "routine" tax evasion case, a comparison identical in nature to the inquiry a district court makes in determining whether a mitigating or aggravating factor takes a case out of the heartland thereby justifying a sentencing departure. *Compare* U.S.S.G. Section 2T1.1 comment (n.4) with U.S.S.G. Section 5K2.0 ("An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range may [be used if it] distinguishes the case from the 'heartland' cases covered by the guidelines…."). Tax evasion is, at its core, an act to misrepresent one's income on a tax return. Since everyone fills out a tax form, the means of committing tax evasion are

no different than the means used by anyone else to prepare and file a tax return. This Court should further note that the enhancement in question focuses on the use of sophisticated means to conceal the tax offense. *See* U.S.S.G. Section 2T1.1(b)(2)("if sophisticated means were used to impede the discovery of the existence or extent of the offense, increase by 2 levels). The government cites 2T1.4(b)(2) in their memorandum in support of their position. That statute states, in pertinent part: "[s]ophisticated means" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts ordinarily indicates sophisticated means." This case involves none of the factors mentioned in U.S.S.G. Section 2T1.4(b)(2). No sophisticated means were used here to conceal the tax offenses Ms. Toledo has plead guilty to. The enhancement should not apply.

## SIMILARLY SITUATED TAX PREPARERS

This Court should also consider that many tax preparers who engage in conduct which is far more egregious than Ms. Toledo are never even charged criminally. Instead, the government will seek a permanent injunction against those taxpayers and, in some cases, seek disgorgement of previously earned tax preparation fees, as well as fines and restitution. While the government did seek a permanent injunction against Ms. Toledo in 2009, Ms. Toledo had not been preparing fraudulent returns in that case. Rather, she allowed Mr. Alberto Alem to use her EFIN when filing returns which he prepared on his own with no knowledge or involvement by Ms. Toledo. This Court should note that Ms. Toledo has permanently closed and shut down all operations of her tax preparation business, canceled her preparer tax identification number ("PTIN"), and permanently

ceased all work since the inception of this case. Ms. Toledo is currently not working and lives solely on her Social Security widow benefits.

## AGE AND HEALTH OF THE DEFENDANT

In its sentencing memorandum, the government states that "[t]he Defendant will no doubt lean on her age and health as reasons why she is not likely to recidivate, but the Court should treat those arguments with as much skepticism as an ITS tax return. The Defendant was in her late-50s while committing massive fraud with substantially the same health conditions then as now." To clarify, the defendant was diagnosed with a brain tumor on December 6, 2016 and, at that time, she was nearly 54 years old. The defendant is currently 61 years old. No amount of skepticism can change the fact that Ms. Toledo has been living with significant health problems stemming from brain cancer for over eight years. The government cannot claim that this is false, so instead they urge the Court to apply skepticism. Plainly stated, Ms. Toledo has no criminal history, has never been convicted of fraud and has taken full responsibility for her actions in this case. Contrary to whatever arguments or suggestions the government may make, Ms. Toledo as at no risk to recidivate and undersigned is confident that the Court will be convinced of this at the conclusion of sentencing. The need for specific deterrence is non-existent in this case.

## 18 U.S.C. SECTION 3553(A) – "*BOOKER*" FACTORS:

Title 18 U.S.C. Section 3553(a) provides the factors to be considered in imposing a sentence in a Federal criminal case. Section 3553(a) provides:

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) The nature and circumstances of the history and characteristics of the offenses and the defendant;

(2) The need for the sentence imposed-

    a. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from further crimes of the defendant; and

    d. To provide the defendant with needed educational, vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The sentencing range established by the guidelines;

(5) Any pertinent policy statement;

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

Each of the factors set forth in Section 3553(a) are discussed below.

**(1) The Nature and Circumstances of the:**

    **(A) History and Characteristics of the Offense.**

As stated above, during the years in issue, Ms. Toledo worked as a tax return preparer. The preparation fee she charged depended upon the time it took to prepare the return and ranged from zero to $500. The average charge was $350 and the tax return preparation fee was not a percentage of the client's refund. Ms. Toledo signed a plea agreement with the United States in which she pled guilty to Counts

12, 13, and 14 of the indictment.  The government has agreed to drop the remaining counts in the indictment during the sentencing hearing which is scheduled for March 21, 2015.

### (B) History and Characteristics of the Defendant.

Ms. Toledo was born in Havana, Cuba.  In 1984, she married Venancio Queupumil and the couple had one child, Alejandro, age 39.  Ms. Toledo came to the United States in 1991.  Shortly after coming to the United States, Ms. Toledo divorced from Mr. Queupumil.  Mr. Queupumil was murdered in 2016 in Mexico.

Ms. Toledo remarried and is currently widowed.  Her husband was Omar L. Toledo and he passed away from cancer in February of 2021.  They had two children together, Albert, age 30 and Angelica, age 28.

Ms. Toledo hopes that the Court will factor into its decision the thoughts and comments of the people in the community that know Ms. Toledo best.  Letters of support will be filed separately for this Court's review.

**(2) The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant.**

The sentence imposed should be sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct and protect the public from future crimes of the Defendant.  The applicable total adjusted offense level pursuant to the Federal sentencing Guidelines

in this case is level 23[1] (without the adjustment for sophisticated means) or 25[2] (with the sophisticated means enhancement). Ms. Toledo has no criminal history. The government has indicated that it will request the Court to impose a guideline sentence based upon the high end of the range and it will further request that this Court imposed consecutive sentences upon Ms. Toledo in order to permit the government recommended sentence of 71 months. Since the statutory maximum for each count is 36 months, the Court would need to, at least partially, impose consecutive sentences in order to grant the government's request. It is respectfully suggested that a sentence of probation with a special condition of 12 months of home confinement would meet each of the objectives set forth in Section 3553(a). Ms. Toledo urges the Court to find that a sentence of probation with a special condition of home confinement would comply with the mandate that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. Section 3553(a)(1).

**(3) The Kinds of Sentences Available:**

In this particular case, it is clear that a sentence of 12 months to be served by home confinement is authorized. A sentence of 12 months would satisfy all of the elements of Section 3553(a). The Court is authorized to sentence Ms. Toledo up to the statutory maximum. However, it is suggested that a sentence below the applicable guideline range is supported by the facts and would best serve the interests of justice.

**(4) The Sentencing Range Established by the Guidelines.**

  **(A) Presentence Investigation Report:**

The probation officer assigned to this case has prepared a comprehensive Presentence

---

[1] Guideline imprisonment range of 46 to 57 months.
[2] Guideline imprisonment range of 57 to 71 months.

Investigation Report. However, the report does not consider the statistics of the United States Sentencing Commission regarding sentences rendered by all district courts in criminal tax cases in order to avoid disparate sentences for similarly situated defendants. It should be noted that Congress caused a Section 7206(1) violation to have a statutory cap of 3 years regardless of the loss amount and the defendant's history. A person who caused a billion-dollar loss with a long criminal history (Category VI) would receive the same maximum sentence of 36 months as a person who caused a 20-million dollar loss who had no criminal history (Category I).

The United States Sentencing Commission reports that 60% of the defendants in pure tax cases received a downward departure/variance sentence. The average sentence reduction was 65.3%. A copy of the report based upon data for the five-year period of time commencing 2014 through 2021 is attached hereto as Exhibit "B." A reduction of 65% in Ms. Toledo's case would reduce the sentence from 36 months maximum to 12.6 months. This sentence would avoid unwanted disparity and would meet all of the Section 3553(a) objectives. There is no reasonable justification to sentence Ms. Toledo to consecutive sentences for each count.

**(B) A Guidelines Sentence is not Presumed Reasonable:**

The Supreme Court has made it clear that the district courts are not permitted to presume that within-guideline sentences are reasonable. *See Nelson v. United States*, 129 S. Ct. 890, 892, 172 L. Ed. 2d 719 (2009). In *Nelson*, the district court made the following statement during sentencing: "the Guidelines are considered presumptively reasonable," and so "unless there's a good reason in the [statutory sentencing] factors …, the Guideline sentence is the reasonable sentence." *Id*. at 891. In evaluating this statement, the Supreme

Court emphasized that:

> Our cases do not allow a sentencing court to presume that a sentence when the applicable Guidelines range is reasonable. In *Rita* we said as much, in fairly explicit terms: We repeat that the presumption before us is an appellate court presumption … [T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Id.* at 892 (*internal citations and quotation marks omitted*).

The Supreme Court found that even though the district court had viewed the Sentencing Guidelines as advisory, because the court presumed that a within-guideline sentence was reasonable, the resulting sentence was erroneous. *United States v. Alexander*, 339 Fed. Appx. 941 (11th Cir. 2009). *See also, United States v. Schmitt*, 495 F.3d 860 (7th Cir. 2007); wherein the court stated:

> As we stated in *United Stats v. DeMaree*, 459 F.3d 791, 794-95 (7th Cir. 2006); the judge is not required – or indeed permitted, *United States v. Brown,* 450 F. 3d 76, 81-82 (1st Cir. 2006)—to "presume" that a sentence within the guidelines range is the correct sentence and if he wants to depart give a reason why it's not correct. All he has to do is consider the guidelines and make sure that the sentence he gives is within the statutory range and consistent with the sentencing factors listed in 18 U.S.C. Section 3553(a).

The procedure demands that the court "sentence based on 18 U.S.C. 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). The advisory guidelines "do not require a judge to leave compassion and common sense at the door to the courtroom." *See United States v. Johnson*, 964 F.2d 124, 125 (2nd Cir. 1992).

Ms. Toledo respectfully urges the Court to find based upon all of the 18 U.S.C. Section 3553(a) factors, including the Federal Sentencing Guidelines, that the appropriate sentence in this case is a sentence of 12 months to be served by home confinement.

**(5) Any Pertinent Policy Statements:**

Counsel for Ms. Toledo has not identified any policy statement that is particularly pertinent to the facts presented in the instant case.

**(6) The Need to Avoid Sentence Disparities Among Defendants:**

As stated above, the United States Sentencing Commission has reported that based upon the data from 2017 through 2021, 60% of the defendants in criminal tax cases received a downward variance and the average variance was a reduction of 65%. This empirical data suggests that, in order to avoid a disparate sentence in this case, Ms. Toledo should receive a sentence of 12 months home confinement followed by probation or supervised release.

**(7) The Need to Provide Restitution to Victims:**

The United States is the sole victim in this case. Ms. Toledo is responsible for the tax loss and the plea agreement contemplates restitution in the amount of $20,759,160.

## CONCLUSION

Ms. Toledo prepared taxes for several years and many of those tax returns were wrong, resulting in claims for tax deductions and credits that her customers did not qualify for. Ms. Toledo has accepted responsibility and she acknowledges that she has no one to blame but herself for this improper conduct. The question is what sentence under these facts will be a sufficient and just punishment for the offense and will promote respect for the law, but at the same time is no harsher than necessary to accomplish these goals and will be viewed as fair and equal treatment as received by other similarly situated defendants in tax cases. Ms. Toledo has serious medical issues and any term of prison confinement will be especially harsh on her and her family. In particular, it will be extremely difficult

for her 93 year-old mother who resides with her and depends on her.

Ms. Toledo respectfully requests that she be sentenced to probation with a special condition that she serve 12 months through home confinement. In view of all the facts in this case, it is respectfully suggested that this would be a just sentence.

Respectfully submitted,

Tomas Law Firm
2850 South Douglas Road, Suite 303
Coral Gables, Florida  33134
Phone:  (305) 213-2344
Facsimile No:  (305) 648-1060
BY: */s/ A. Antonio Tomas*
     A. Antonio Tomas
     FBN 662003

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via CM/ECF to counsel for the United States on the 17th day of March, 2024.

*/s/ A. Antonio Tomas*
A. Antonio Tomas